# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | |
|---|---|
| **BOBBY RIOS,** Individually and on behalf of all others similarly situated, § § § § § | |
| *Plaintiff,* § § | |
| v. § | **Civil Action No. _____** |
| § | |
| **ETS OILFIELD SERVICES, L.P., ETS SERVICES MANAGEMENT, LLC** and **YELLOWJACKET OILFIELD SERVICES, L.L.C.** § § § § § | **JURY TRIAL DEMANDED** **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| *Defendants.* § | |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Bobby Rios brings this action individually and on behalf of all others similarly situated (hereinafter "Plaintiff and the Putative Class Members") who worked for ETS Oilfield Services, L.P., (hereinafter "ETSO"), ETS Services Management, LLC (hereinafter "ETSM") and/or Yellowjacket Oilfield Services, L.L.C. (hereinafter "Yellowjacket") (collectively "Defendants"), and were paid a salary plus a day rate/job bonus but no overtime from three years preceding the filing of the Original Complaint through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

## I.
## OVERVIEW

1.  This is a collective action to recover overtime wages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*

2. Plaintiff and the Putative Class Members are those current and former oilfield workers who worked for Defendants at any time from June 5, 2015 through the final disposition of this matter, and were paid a salary plus a day rate/job bonus, but no overtime compensation for all hours worked over forty (40) in each workweek.

3. The FLSA requires that all non-exempt employees—like Plaintiff and the Putative Class Members—receive overtime compensation for all hours worked over forty in a regular workweek.

4. Plaintiff and the Putative Class Members routinely work (and worked) in excess of forty (40) hours per workweek.

5. Plaintiff and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6. The decision by Defendants to not pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

7. Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

8. Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA. Specifically, Plaintiff and the Putative Class Members performed routine and manual labor type job duties in the oilfield.

9. Plaintiff and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

10. Plaintiff prays that all similarly situated oilfield workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

11. Plaintiff Bobby Rios worked for Defendants within the relevant time period. Plaintiff Rios did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12. The Putative Class Members include those current and former oilfield workers who worked for Defendants at any time from June 4, 2015 through the final disposition of this matter and have been subjected to the same illegal pay system under which Plaintiff Rios worked and was paid.

13. ETS Oilfield Services, L.P. ("ETSO") is a Domestic Limited Partnership, and may be served through its registered agent for service of process: **Renee Comstock, 200 N. Loraine, Suite 1450, Midland, Texas 79701**.

14. ETS Services Management, LLC ("ETSM") is a Domestic Limited Liability Company, and may be served through its registered agent for service of process: **Renee Comstock, 200 N. Loraine, Suite 1450, Midland, Texas 79701**.

15. Yellowjacket Oilfield Services, L.L.C. ("Yellowjacket") is a Domestic Limited Liability Company, and may be served through its registered agent for service of process: **Renee Comstock, 200 N. Loraine, Suite 1450, Midland, Texas 79701.**

## III.
## JURISDICTION & VENUE

16. This Court has subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

17. This Court has personal jurisdiction over Defendants because the cause of action arose within this District as a result of Defendants' conduct within this District.

---

[1] The written consent of Bobby Rios is attached hereto as Exhibit "A".

18. Venue is proper in the Southern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

19. Specifically, Defendants have maintained a working presence throughout South Texas and Plaintiff Rios performed work for Defendants in Nueces County, Texas, all of which is located within this District and Division.

20. Venue is therefore proper in this District pursuant to 28 U.S.C. § 1391.

## IV.
## ADDITIONAL FACTS

21. Defendant ETSO performs various services in the oil and gas industry, such as testing pumps, hydraulic wrenches, completion fluid services, water transfers, mulching and land clearing, hydraulic power chokes, downhole motors, and rig wash.

22. Defendant ETSM is the General Partner for ETSO and an employer as defined by 29 U.S.C. § 203(d).

23. Defendant Yellowjacket is an oilfield services company providing a variety of services to the oilfield industry, such as completion fluid services, wireline services, and fishing services.[2]

24. Defendants are joint employers pursuant to 29 C.F.R. § 791.2.

25. Upon information and belief, Yellowjacket purchased ETSO in February 2017 and acquired all of ETSO's liabilities, including those arising under the FLSA.

26. After February 2017, Yellowjacket directly managed Plaintiff and the Putative Class Members and continued to direct Plaintiff and the Putative Class Members for the remainder of their employment with Defendants.

27. During this time, Yellowjacket began to operate all of ETSO's equipment and occupy all of ETSO's land and buildings.

---

[2] http://www.yjosllc.com

28. Defendants directly or indirectly hired Plaintiff and the Putative Class Members, controlled their work schedules and conditions of employment, and determined the rate and method of the payment of wages.

29. Specifically, prior to February 2017, ETSO directed Plaintiff and the Putative Class Members in their daily schedules, directing them as to which job sites to go to and what to do at each job site.

30. After February 2017, Yellowjacket exercised direct control over Plaintiff and the Putative Class Members, informing them as to which job sites to visit and what work they needed to accomplish at each job site.

31. Defendants maintained control, oversight, and direction over Plaintiff and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages for overtime compensation.

32. Specifically, after February 2017, Plaintiff and the Putative Class Members had to follow Yellowjacket's policies and procedures instead of ETSO's policies and procedures.

33. Defendants mutually benefited from the work performed by Plaintiff and the Putative Class Members.

34. Defendants did not act entirely independently of each other and have not been completely disassociated with respect to the work of Plaintiff and the Putative Class Members.

35. Defendants shared the services of Plaintiff and the Putative Class Members. Defendants acted directly or indirectly in the interest of each other in relation to Plaintiff and the Putative Class Members.

36. Defendants dictated the practice goals and what pressing or tactical items needed to be done in order to meet the goals of the respective Defendants and/or their clients.

37. Moreover, all Defendants had the power to hire and fire Plaintiff and the Putative Class. Members; supervised and controlled Plaintiff and the Putative Class Members' work schedules and conditions of their employment; determined their rate and method of payment; and, maintained their employment records.

38. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

39. To provide their services, Defendants employed numerous oilfield workers who were paid a salary plus a day rate/job bonus but were not paid overtime.

40. While exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work in the oilfield.

41. Plaintiff Rios worked for Defendants as a Fluid Engineer from approximately 2014 through July 2017.

42. Defendants paid Plaintiff and the Putative Class Members a salary plus a day rate/job bonus but no overtime until January 2017. After January 2017, Defendants paid Plaintiff and the Putative Class Members an hourly rate of twenty-five ($25.00) dollars per hour plus overtime for all hours worked in excess of forty (40) hours per workweek.

43. Although it is well-known that blue-collar oilfield workers like Plaintiff and the Putative Class Members are not exempt from overtime, Defendants did not pay Plaintiff and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

44. Plaintiff and the Putative Class Members' primary job duties included performing daily checklists, assisting with the preparation of equipment, and performing other oilfield related functions on various job sites.

45. Specifically, Plaintiff Rios would mix chemicals according to predesigned formulas, carry buckets filled with drilling fluids, and load the drilling fluids into well pumps.

46. Upon information and belief, Plaintiff and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by Defendants and/or their clients.

47. Virtually every job function was pre-determined by Defendants and/or their clients, including the tools to use at a job site, the schedule of work, and related work duties. In fact, Plaintiff and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

48. Moreover, Plaintiff and the Putative Class Members' job functions were primarily routine and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

49. Indeed, Plaintiff and the Putative Class Members are blue-collar workers. They rely on their hands, physical skills, and energy to perform manual and routine labor in the oilfield.

50. Plaintiff and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

51. Plaintiff and the Putative Class Members did not (and currently do not) have the authority to hire or fire other employees, and they were not (and currently are not) responsible for making hiring or firing recommendations.

52. Moreover, Plaintiff and the Putative Class Members did not (and currently do not) supervise two or more employees.

53. Plaintiff and the Putative Class Members' duties did not (and currently do not) concern work directly related to the management or general business operations of Defendants and/or their customers.

54. Plaintiff and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

55. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

56. Defendants denied Plaintiff and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice.

57. Defendants applied this pay practice despite clear and controlling law that states that the manual labor/technical, routine duties which were performed by Plaintiff and the Putative Class Members consisted of **<u>non-exempt</u>** work.

58. Accordingly, Defendants' pay policies and practices blatantly violated (and continue to violate) the FLSA.

## V.
## CAUSES OF ACTION

### <u>COUNT ONE</u>
**(Collective Action Alleging FLSA Violations)**

**A.  FLSA COVERAGE**

59. All previous paragraphs are incorporated as though fully set forth herein.

60. The FLSA Collective is defined as:

**ALL OILFIELD WORKERS WHO WORKED FOR ETS OILFIELD SERVICES, L.P., ETS SERVICES MANAGEMENT, L.L.C. AND/OR YELLOWJACKET OILFIELD SERVICES, L.L.C., AT ANY TIME FROM JUNE 5, 2015 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND WERE PAID A SALARY PLUS A DAY RATE/JOB BONUS BUT DID NOT RECEIVE OVERTIME FOR HOURS WORKED OVER FORTY IN ANY WORKWEEK ("FLSA Collective" or "FLSA Collective Members").**

61. At all times hereinafter mentioned, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

62. At all times hereinafter mentioned, Defendants have been enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

63. At all times hereinafter mentioned, Defendants have been enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

64. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

65. In performing the operations hereinabove described, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

66. Specifically, Plaintiff and the FLSA Collective Members are (or were) **_non-exempt_** employees who worked for Defendants and were engaged in oilfield services that were directly essential to the production of goods for Defendants and related oil and gas exploration and production companies. 29 U.S.C. § 203(j).

67. At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

68. In violating the FLSA, Defendants acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

69. The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 60.

70. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA**

71. All previous paragraphs are incorporated as though fully set forth herein.

72. Defendants violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

73. Plaintiff and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

74. Moreover, Defendants knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

75. Defendants knew or should have known their pay practices were in violation of the FLSA.

76. Defendants are sophisticated parties and employers, and therefore knew (or should have known) their policies were in violation of the FLSA.

77. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay overtime in accordance with the law.

78. The decision and practice by Defendants to not pay overtime was neither reasonable nor in good faith.

79. Accordingly, Plaintiff and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. FLSA COLLECTIVE ACTION ALLEGATIONS

80. All previous paragraphs are incorporated as though fully set forth herein.

81. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff Rios.

82. Other similarly situated employees have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

83. The FLSA Collective Members are defined in Paragraph 60.

84. Defendants' failure to pay any overtime compensation results from generally applicable policies and practices, and does not depend on the personal circumstances of the individual FLSA Collective Members.

85. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

86. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

87. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

88. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the FLSA Collective Members are blue-collar oilfield workers entitled to overtime after forty (40) hours in a week.

89. Defendants have employed a substantial number of similarly situated oilfield workers across the United States since June 5, 2015. Upon information and belief, these workers are geographically dispersed, residing and working in locations across the United States. Because these workers do not have fixed work locations, they may work in different states across the country in the course of a given year.

90. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Defendants will retain the proceeds of its rampant violations.

91. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

92. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 60 and notice should be promptly sent.

## VI.
## RELIEF SOUGHT

93. Plaintiff respectfully prays for judgment against Defendants as follows:

    a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 60 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

    b. For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order awarding Plaintiff (and those FLSA Collective Members who have joined in the suit) back wages that have been improperly withheld;

d. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

e. For an Order awarding Plaintiff the costs and expenses of this action;

f. For an Order awarding Plaintiff his attorneys' fees;

g. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

h. For an Order awarding the Plaintiff service awards as permitted by law;

i. For an Order compelling the accounting of the books and records of Defendants, at Defendants' own expense;

j. For an Order providing for injunctive relief prohibiting Defendants from engaging in future violations of the FLSA, and requiring Defendants to comply with such laws going forward; and

k. For an Order granting such other and further relief as may be necessary and appropriate.

Date: June 5, 2018                    Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:    /s/ *Clif Alexander*
      **Clif Alexander**
      Federal I.D. No. 1138436
      Texas Bar No. 24064805
      clif@a2xlaw.com
      **Austin W. Anderson**
      Federal I.D. No. 777114
      Texas Bar No. 24045189
      austin@a2xlaw.com
      **Lauren E. Braddy**
      Federal I.D. No. 1122168
      Texas Bar No. 24071993
      lauren@a2xlaw.com
      **Alan Clifton Gordon**
      Federal I.D. No. 19259
      Texas Bar No. 00793838
      cgordon@a2xlaw.com
      **Carter T. Hastings**
      Federal I.D. No. 3101064
      Texas Bar No. 24101879
      carter@a2xlaw.com
      **George Schimmel**
      Federal I.D. No. 2338068
      Texas Bar No. 24033039
      geordie@a2xlaw.com
      819 N. Upper Broadway
      Corpus Christi, Texas 78401
      Telephone: (361) 452-1279
      Facsimile: (361) 452-1284

      ***Attorneys in Charge for Plaintiff and the Putative Class Members***